UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ANTHONY ROY MILLIGAN JR.,

       Defendant.

_____/

Case No. 20-cr-20134

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) DENYING DEFENDANT'S MOTION TO SUPPRESS COLOMBIAN WIRETAP CALLS (Dkt. 85) AND (2) DENYING DEFENDANT'S MOTION TO SUPPRESS TITLE III WIRETAP EVIDENCE (Dkt. 86)**

Defendant Anthony Milligan is charged with one count of conspiracy to possess with intent to distribute heroin and methamphetamine under 21 U.S.C §§ 841, 846, and a second count of possession with intent to distribute heroin under § 841(a)(1). Superseding Indictment (Dkt. 16). Before the Court are his (i) motion to suppress evidence gathered from a Colombian wiretap (Colombian Wiretap Motion, Dkt. 85) and (ii) motion to suppress Title III wiretap evidence (Title III Motion, Dkt. 86).[1] The Court denies both motions.

## I. BACKGROUND

In late 2018 or 2019, during their investigation into Milligan's alleged drug trafficking activity, agents at the Drug Enforcement Administration (DEA) obtained from Colombian law enforcement recorded telephone calls involving Milligan and an unidentified Colombian national. Colombian Wiretap Mot. at 2; Hr'g Tr. at 15–16 (Dkt. 101). The DEA obtained the call recordings

---

[1] In addition to the motions, the briefing includes the Government's responses (Dkts. 92, 93), Milligan's supplemental brief on both motions (Dkt. 104), the Government's supplemental brief regarding the Colombian wiretap (Dkt. 103), and the Government's supplemental brief regarding the Title III wiretap (Dkt. 106). The Court held a hearing on the motions on June 6, 2023.

through its coordination with the Sensitive Investigative Unit (SIU), a unit of the Colombian national police. Hr'g Tr. at 10.

DEA agent Brian Bridgeford, who was stationed in Cartagena, Colombia and served as the DEA's liaison to the SIU, was involved with the DEA's receipt of the intercepted calls. Id. After learning from other law enforcement officials that Milligan was in contact with an individual with a Colombian telephone number, Agent Bridgeford passed that information to the SIU. Id. at 12. Sometime after Agent Bridgeford passed that lead, the SIU informed Agent Bridgeford that Milligan was recorded during an SIU wiretap of the unidentified Colombian national. Id. at 13–14. The SIU provided Agent Bridgeford with portions of wiretapped calls involving Milligan, and he then shared the recordings with DEA agents in Detroit. Id. at 16.

The DEA did not obtain a warrant in connection with the Colombian wiretap. Id. at 24–25. According to the Government, the SIU obtained an order from a Colombian judge authorizing the wiretap pursuant to Colombian law. Id. at 16; Colombian Judicial Authorization of Wiretap Order (Dkt. 93-1).

In August 2019, in a separate but related effort, the DEA obtained an order from Judge Laurie Michelson, United States District Judge for the Eastern District of Michigan, authorizing a wiretap of Milligan's phone under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C §§ 2510 et seq. Title III Order (Dkt. 95). In support of its application for the Title III order, the DEA supplied an affidavit (Title III Affidavit) setting forth the purpose of the requested wiretap, the goals of the DEA's investigation, and evidence which, in the Government's view, supplied the requisite probable cause for the wiretap. Id.[2] The Title III Affidavit relied in part on evidence gathered from the Colombian wiretap. See id. ¶¶ 67–70.

---

[2] The Title III Affidavit is included in the same filing as the Title III Order.

## II. ANALYSIS

Milligan seeks to suppress all evidence gathered from the Colombian and Title III wiretaps. Colombian Wiretap Mot. at 1–2; Title III Mot. at 1–3. He contends that the evidence gathered from the Colombian wiretap is subject to the Fourth Amendment's requirements and excludable because (i) it was obtained via a joint venture between the domestic DEA and Colombian SIU, and (ii) the Government's conduct in obtaining the evidence was so extreme that it "shocks the judicial conscience." Id. at 2. As to evidence gathered from the Title III Order, Milligan argues that the Government failed to demonstrate that the evidence could not reasonably be procured through other investigative methods, and therefore, the Title III wiretap did not satisfy the necessity requirement under 18 U.S.C. § 2518.

The Court begins by addressing Milligan's challenge to the Colombian wiretap and proceeds to address his challenge to the Title III wiretap.

### A. The Colombian Wiretap

The Fourth Amendment prohibits "unreasonable searches and seizures." United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990). Importantly, however, the "Fourth Amendment does not extend to foreign government actions in foreign territories, even when directed against a United States citizen." United States v. Serhan, No. 14-20685, 2015 WL 3578744, at *2 (E.D. Mich. June 5, 2015). "Evidence resulting from a search or seizure by a foreign government on its own soil is admissible even when that search or seizure is triggered by information supplied by United States law enforcement authorities." Id. This "foreign government action" rule, sometimes referred to as the "international silver platter doctrine, " see United States v. Getto, 729 F.3d 221, 227 (2d Cir. 2013), is subject to two exceptions: "(1) if the foreign government's acts were so extreme that they shock the judicial conscience, or (2) if American law enforcement officials participated in the foreign search, or if the foreign authorities conducting the search were acting as agents for their American counterparts." Serhan, 2015 WL 3578744, at *2 (punctuation

3

modified).³ The latter exception is also referred to as the "joint venture" exception. United States v. Vatani, No. 06-20240, 2007 WL 789038, at *6 (E.D. Mich. Mar. 14, 2007).

In both his motion and supplemental brief, Milligan notes that federal courts have excluded evidence initially obtained by foreign officials "where the conduct of foreign officials in acquiring the evidence is so extreme that they shock the judicial conscience." Colombian Wiretap Mot. at 5; Milligan Suppl. Br. at 4. But Milligan does not identify any particular conduct that he asserts "shocks" the judicial conscience. Nor is the Court aware of any evidence that the Colombian officials engaged in "extreme" conduct in the course of conducting the wiretap. Indeed, Colombian law enforcement appears to have acted consistent with Colombian law by obtaining judicial authorization to conduct the wiretaps. See Colombian Judicial Authorization of Wiretap Order. Such investigative conduct cannot be characterized as extreme or shocking. See United States v. Pierson, No. 22-1918, 2023 WL 4442996, at *4 (8th Cir. July 11, 2023) (finding that a failure by Mexican law enforcement to obtain a warrant as required by Mexican law was "far from sufficient to establish conduct that shocks the judicial conscience").

Because Milligan fails to identify any evidence demonstrating that the Colombian wiretaps were extreme or shocking to the judicial conscience, this exception to the foreign government action rule is inapplicable. See United States v. Ceren, No. 04-cr-20065, 2010 WL 2639589, at *2 (S.D. Fla. June 4, 2010) (finding that wiretap performed by Colombian officials did not "shock the conscience" where defendant failed to raise any evidence that "circumstances surrounding the wiretaps were . . . extreme").

---

³ As the Government notes, see Gov. Colombian Wiretap Suppl. Br. at 7, Title III, which governs domestic wiretaps, has no extraterritorial force and does not apply to wiretaps occurring outside of the United States. See Huff v. Spaw, 794 F.3d 543, 547 (6th Cir. 2015). Although Milligan makes a cursory argument that the Government should have obtained a Title III warrant to obtain the Colombian wiretap recordings, Milligan does not appear to dispute the scope of Title III's application. See Milligan Suppl. Br. at 5.

4

Milligan next argues that "the cooperation between the DEA and SIU agents was of such a nature that SIU agents were essentially agents or virtual agents of the DEA." Milligan Suppl. Br. at 4. The Court disagrees.

As courts outside the Sixth Circuit have explained, "to render foreign law enforcement officials virtual agents of the United States, American officials must play some role in controlling or directing the conduct of the foreign parallel investigation. . . . [I]t is not enough that the foreign government undertook its investigation pursuant to an American request." Pierson, 2023 WL 4442996, at *4 (punctuation modified) (quoting United States v. Aleem, 641 F. App'x 96, 97 (2d Cir. 2016)).

Milligan cites several points of "coordination" between the DEA and the SIU in connection with the Colombian wiretap. He submits (i) that Agent Bridgeford passed Milligan's name to the SIU, Milligan Suppl. Br. at 2 (citing Hr'g Tr. at 23), (ii) that the SIU, in turn, kept Agent Bridgeford apprised of its efforts to wiretap the Colombian national, id. at 3 (citing Hr'g Tr. at 26), and (iii) that Agent Bridgeford assisted SIU in translating calls involving Milligan, id. at 4 (citing Hr'g Tr. at 32).

The activity cited by Milligan is insufficient to establish that DEA agents directed or controlled the SIU's investigation such that the DEA and SIU operated a joint venture. To be sure, Milligan has established that the DEA coordinated with the SIU. But mere coordination between domestic and foreign law enforcement is not sufficient to establish a joint venture—even if such coordination was "pursuant to an American request." Pierson, No. 2023 WL 4442996, at *4. Rather, Milligan must show that the DEA "direct[ed]" or "control[ed]" the SIU's investigation. Id. As Agent Bridgeford explained, however, the DEA had no control over the SIU's investigation, nor did the DEA have any input as to how the SIU conducted its investigation. See Hr'g Tr. at 13–14 (reflecting Agent Bridgeford's testimony that he did not provide the SIU with any "money or tools" to assist them in acting on the tip regarding Milligan and stating that he was not informed

5

about SIU's decision to perform a wiretap until after it was initiated); id. at 15 (reflecting Agent Bridgeford's testimony that he had no "input or control" of the progression of the investigation and that "it was the Columbian national police, not the DEA who [supervised] the [telephone] interception"). Milligan's argument is without merit.

Because Milligan cannot show (i) that the circumstances surrounding the Colombian wiretap "shocked" the judicial conscience, or (ii) that the SIU performed the wiretap as part of a joint venture with the DEA, the Court concludes that such evidence is not subject to suppression under the exclusionary rule.[4]

B. The Title III Wiretap

Title III requires that federal law enforcement seeking to perform a wiretap provide a judge with an affidavit containing a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). A judge reviewing the affidavit may authorize the requested wiretap if the judge is satisfied that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Id. at § 2518(3)(c). "This 'necessity requirement' ensures that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Castro, 960 F.3d 857, 863 (6th Cir. 2020) (punctuation modified). The "purpose of the necessity requirement is not to foreclose electronic surveillance until every other

---

[4] In his motion challenging the Colombian wiretap, Milligan also sets forth the standards for relevance under Federal Rules of Evidence 401 and 402 and the admissibility of prejudicial evidence under Rule 403. See Colombian Wiretap Mot. at 5–6. Milligan does not further develop this argument in either his motion or supplemental brief in support. His failure to do so constitutes a waiver of any argument that the Columbian wiretap violates these federal rules. McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (punctuation modified).

imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." Id. (punctuation modified).

Milligan argues that the Title III Affidavit fails to meet Title III's necessity requirement because the Government either (i) failed to sufficiently utilize other investigative techniques, such as surveilling Milligan through pole cameras or conducting trash pulls, or (ii) had already obtained sufficient information from other sources, such as toll and pen registers and confidential sources. Title III Mot. at 8–11. Neither argument has merit.

As to the first argument, Milligan points to a number of investigative techniques that, in his view, the Government should have utilized before conducting the Title III wiretap. Specifically, he posits that the Government could have monitored Milligan via pole cameras or GPS tracking devices, conducted trash pulls, convened a grand jury, utilized undercover agents, or performed controlled buys. Id. But as the United States Court of Appeals for the Sixth Circuit has repeatedly explained, the Government "is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." United States v. Rich, No. 18-2268, 2021 WL 4144059, at *3 (6th Cir. Sept. 13, 2021) (punctuation modified).

Consistent with § 2518(1)(c), the Title III Affidavit thoroughly explains why each of the investigative methods proffered by Milligan either failed or was considered but not attempted. See Gov. Title III Suppl. Br. at 7–16; see United States v. Gardner, 32 F.4th 504, 517–518 (6th Cir. 2022) (finding that affidavit satisfied Title III's necessity requirement where it provided pages of analysis explaining why, "in [a] specific case, physical surveillance, confidential sources, and trash pulls didn't work or proved too risky").[5] In addition, the affidavit contains a "Necessity" section,

---

[5] The affidavit sets forth the limitations of each of the investigative techniques cited by Milligan:

7

which outlines the affiant's belief that a wiretap was the "only available investigative technique [that] has a reasonable likelihood of revealing and of securing admissible evidence" regarding the "the nature of offenses being investigated," including for the purpose of discovering the identity of other members of the drug trafficking organization, locations used by the drug trafficking organization to conceal drugs, and assets purchased from drug proceeds. Title III Aff. ¶ 77.

At bottom, the Title III Affidavit met the requirement of providing "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 2518(1)(c). The Court rejects Milligan's necessity argument.[6]

- Physical Surveillance: "Surveillance was conducted . . . but has proven ineffective" due to Milligan's multiple residences and vehicles, Title III Aff. ¶ 84;
- GPS/Mobile Tracking: "During limited . . . electronic surveillance . . . [officers] observed . . . that Milligan routinely utilizes rental vehicles . . . to avoid detection . . . ," id. ¶ 87 (capitalization modified);
- Pole Cameras: "[Officers] have considered installing a pole camera" but decided against it because Milligan became 'nomadic,'" id. ¶ 90;
- Grand Jury: "[Grand] Jury investigation or interview . . . would not be successful" because it would "alert Milligan to the investigation, causing him to become more cautious or flee," id. ¶ 95;
- Undercover Agents: "If an undercover agent were to be introduced . . . , I believe the undercover agent would not be able to obtain any additional information about the [Drug Trafficking Operation]," id. ¶ 96;
- Controlled Purchases: "Detroit DEA Officers/Agents have yet to penetrate the DTO," and "no individual has a relationship with [] Milligan . . . to attempt [controlled purchase] without risking compromising the investigation," id. ¶ 97;
- Financial Investigation: "Investigators have been unable to identify the methods which the [Drug Trafficking Organization] utilized to transfer the drug proceeds from illegal narcotics . . . . Officers/Agents have not identified any open bank accounts being utilized by Milligan at this time," id. ¶¶ 103–104;
- Interviews: "Investigators have considered interviewing [the witness], however, [the witness's] exact location is unknown," id. ¶ 105;
- Trash Pulls: "trash searches . . . most likely do not fulfill the goals of this particular investigation;" id. ¶ 108.

[6] Milligan also makes a cursory argument that, should the Court exclude evidence gathered from the Colombian wiretap, the TIII Warrant lacks probable cause. See TIII Mot. at 12. However, because the evidence gathered from the Colombian wiretap is not subject to exclusion, this argument is without merit.

### III. CONCLUSION

For the reasons stated above, the Court denies Defendant Anthony Milligan's motion to suppress the Colombian wiretap calls (Dkt. 85) and motion to suppress the Title III wiretap evidence (Dkt. 86).

SO ORDERED.

Dated: July 25, 2023　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge