UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                           Case No. 20-cr-20134

v.                                           HON. MARK A. GOLDSMITH

ANTHONY ROY MILLIGAN JR.,

              Defendant.

_____/

## OPINION & ORDER
### (1) DENYING MILLIGAN'S MOTIONS IN LIMINE (Dkts. 123, 125, 126, 127, 149) & (2) GRANTING THE GOVERNMENT'S CONSOLIDATE MOTION IN LIMINE (Dkt. 129)

Defendant Anthony Milligan is charged with one count of conspiracy to possess with intent to distribute heroin and methamphetamine under 21 U.S.C §§ 841, 846, and a second count of possession with intent to distribute heroin under § 841(a)(1). Superseding Indictment (Dkt. 16).

The parties have filed a number of motions in limine. Milligan has filed five motions in limine to preclude admission of evidence of (i) an Internet Protocol (IP) address allegedly associated with Milligan (Dkt. 123), (ii) a package discovered en route to Pontiac, Michigan (Dkt. 125), (iii) certain text messages and phone contents (Dkt. 126), (iv) location data (Dkt. 127), and (v) Milligan's Facebook messages contained in proposed Government exhibit 29A/4 (Dkt. 149). For its part, the Government has filed a consolidated motion in limine (Dkt. 129) to preclude four categories of evidence or argument: (i) encouraging jury nullification, (ii) regarding Government charging decisions, (iii) concerning collateral consequences associated with a conviction, and (iv) improperly characterizing the Government's burden of proof.

For the reasons that follow, the Court denies Milligan's motions in their entirety and grants the Government's consolidated motion in its entirety.[1]

## I. ANALYSIS

The Court proceeds by addressing Milligan's motions in limine and then addresses the Government's consolidated motion.

### A. Milligan's Motions in Limine

Milligan moves to preclude (i) reference to an IP address allegedly associated with Milligan, (ii) evidence related to a package discovered en route to Pontiac, Michigan, (iii) certain text messages and contents from Valerie Williams's phone, (iv) location data derived from a subpoena of Verizon Wireless, and (v) Milligan's Facebook messages contained in proposed Government exhibit 29A/4. The Court addresses each motion in turn.

### 1. Reference to IP Address

Milligan seeks to preclude the Government from referencing an IP address used to track a package allegedly containing a kilogram of heroin that was addressed to Anthony Williams at 2 Wenonah Drive, Pontiac, Michigan (Wenonah Package). Milligan Mot. to Preclude IP Address ¶ 3; Gov't Resp. at 1–2.

According to the parties' briefing, after the Government seized the package, a Postal Service Intelligence Specialist identified three IP addresses used to track the package on the United States Postal Service (USPS) website. Gov't Resp. at 2; Milligan Mot. to Preclude IP Address ¶¶ 3–4. The Government then subpoenaed Verizon Wireless to identify the device assigned to those IP addresses and Verizon's response to the subpoenas indicated that the IP address was used by a

---

[1] In addition to the motions, the briefing includes the Government's response to Milligan's motions in limine (Dkt. 130), Milligan's response to the Government's consolidated motion in limine (Dkt. 132), and the Government's response to Milligan's motion in limine to exclude proposed Government exhibit 29A/4 (Dkt. 151).

phone associated with Milligan.  Br. Supp. Mot. to Preclude IP Address at PageID.819; Gov't Resp. at 2.

Milligan argues that the Government was required to obtain a warrant before obtaining the IP address because he had a "legitimate expectation of privacy in the IP address" under the Fourth Amendment.  Br. Supp. Mot. to Preclude IP Address at PageID.819–820.

The Government responds that there was "no Fourth Amendment intrusion . . . rather, the user [of the IP address] gave this information to USPS."  Gov't Resp. at 3.  It further argues that, as a general matter, Milligan does not maintain a reasonable expectation of privacy in his IP address.  Id.  at 4.  The Government also points out that it obtained information associated with the IP address—such as the subscriber's "name, address, billing details, etc."—from Verizon.  Id. at 5.  Thus, the Government argues, under the "third party doctrine," Milligan has no expectation of privacy in "information he voluntarily turns over to third parties" like Verizon and the USPS. Id. (quoting Smith v. Maryland, 442 U.S. 735, 743–744 (1979)).

The Court agrees with the Government.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  "[A] person contending that a search violated his or her Fourth Amendment rights must first demonstrate that he or she had a legitimate expectation of privacy in the premises searched that 'society is prepared to recognize as reasonable.'"  United States v. Mills, 357 F. Supp. 3d 634, 642 (E.D. Mich. 2019) (quoting Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018)).  Under the "third-party doctrine," a "person has no legitimate expectation of privacy in information voluntarily turned over to third parties."  United States v. Maclin, 393 F. Supp. 3d 701, 708 (N.D. Ohio 2019) (punctuation modified) (quoting Carpenter, 138 S.Ct at 2216).

United States v. Felton, a case with almost identical facts as those at issue here, is instructive.  367 F. Supp. 3d 569, 574 (W.D. La. 2019).  In Felton, USPS informed law

enforcement of suspicious packages that were later found to contain methamphetamine.  Id. at 571–572.  In the course of investigating the packages, law enforcement identified an IP address owned by internet service provider, Comcast, that was used to track the packages while they were in transit.  Id.  After receiving a subpoena from law enforcement regarding the IP address, Comcast provided the subscriber information records associated with that IP address, revealing that the IP address was used by the defendant.  Id.  The defendant moved to suppress the records, arguing that Government's efforts to obtain information regarding his IP address from USPS and Comcast without a warrant violated his Fourth Amendment rights.  Id. at 573. Rejecting the defendant's argument, the Court explained that "the IP address and tracking logs obtained from the USPS and Comcast were not owned, nor possessed by [the defendant]," and that he did not have reasonable expectation of privacy, given that the Government obtained such information from third-parties Comcast and USPS.  Id. at 574.

Like the defendant in Felton, Milligan abandoned any reasonable expectation of privacy in his IP address when he utilized the USPS website to track the package.  By providing his IP address to USPS through the use of its site, he "voluntarily turned over" that information to USPS and cannot maintain a legitimate expectation of privacy in the IP address when the Government then obtains information associated with that IP address from Verizon.

Resisting this conclusion, Milligan points to United States v. Kahler, for the proposition that the Government's warrantless collection of a user's IP address amounts to a Fourth Amendment violation.  Br. Supp. Mot. to Preclude IP Address at PageID.820 (citing 236 F. Supp. 3d 1009 (E.D. Mich. 2017)).  But as the Government points out, see Gov't Resp. at 4, Kahler analyzed the Fourth Amendment implications of a Government sting operation in which the Government took control of a website distributing child pornography website to obtain the IP addresses of users who attempted to keep such addresses hidden.  Kahler, 236 F. Supp. 3d at 1021. In rejecting the Government's argument that users lacked reasonable expectations of privacy, the

<u>Kahler</u> court explained that "[l]aw enforcement, acting alone, may not coerce the computers of internet users into revealing identifying information without a warrant, at least when the user has taken affirmative steps to ensure that third parties do not have that information." <u>Id.</u>

Unlike the defendant in <u>Kahler</u> who took steps to conceal his identity, Milligan failed to take any steps to conceal his IP address. Nor did the Government coerce Milligan into revealing his IP address. Instead, Milligan freely turned over the IP address to the USPS by utilizing its website to track the package. No reasonable expectation of privacy attaches under such circumstances.

Because Milligan lacks a reasonable expectation of privacy in his IP address where the Government obtained the address from the USPS website, the Court denies Milligan's motion in limine to prohibit reference to the IP address at trial.

### 2. Wenonah Package

Milligan moves to prevent admission of the package discovered en route to the home located at 2 Wenonah Drive in Pontiac, Michigan on the grounds that the Government "cannot meet the authentication burdens" of Federal Rule of Evidence 901 to admit the package. Br. Supp. Mot. to Prohibit Admission of Wenonah Package at PageID.832. Milligan submits that the Wenonah package "disappeared for a time" after it was intercepted by the USPS and that he was not provided with a chain of custody. Mot. to Prohibit Admission of Wenonah Package ¶¶ 3–8.

In response, the Government contends that Milligan's counsel has inspected and photographed the Wenonah package and has been provided with the United States Postal Inspection Service (USPIS) Evidence Tracking History report documenting its chain of custody. Gov't Resp. at 6. The Government further submits that it anticipates calling witnesses from the USPIS who will testify to the authenticity and chain of custody of the Wenonah package. <u>Id.</u> at 6–7.

Given the Government's stated intention to call witnesses who can testify at trial regarding the chain of custody and authenticity of the Wenonah package, the Court will deny Milligan's motion without prejudice.  He may reassert his objection to the admission of the Wenonah package should his concerns regarding the authenticity of the package remain after the Government's USPIS witnesses have testified regarding its authenticity and chain of custody.

### 3.   Text Messages and Contacts

Milligan argues that evidence of text messages and contacts obtained from Valerie Williams, a resident of 2 Wenonah Drive, is inadmissible because such evidence is (i) hearsay, (ii) irrelevant, and (iii) cannot be properly authenticated.  Br. Supp. Mot. to Prohibit Admission of Phone Evid. at PageID.835–836.  The Court discusses each argument in turn.

#### a.   Hearsay

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  United States v. Rodriguez-Lopez, 565 F.3d 312, 314 (6th Cir. 2009) (punctuation modified) (citing Fed. R. Evid. 801(c)).  "As a general rule, hearsay is not admissible in federal courts."  Id. (citing Fed. R. Evid. 802).  However, there are various exclusions and exceptions that allow for the admission of hearsay evidence.  See Fed. R. Evid. 801; Fed. R. Evid. 803.

Milligan argues that the contents of the phone are hearsay under Federal Rule of Evidence 801 and not subject to the coconspirator statement exception under Rule 801(d)(2)(E).  Br. Supp. Mot. to Prohibit Admission of Phone Evid. at PageID.835–836.  The Government submits that Milligan's hearsay arguments are overbroad because he fails to identify which messages or phone contents are hearsay.  Gov't Resp. at 8.

 The Court agrees with the Government. The Court cannot make a hearsay determination without an understanding of which statements are being offered into evidence and for what purpose.  See Crigger v. McIntosh, 254 F. Supp. 3d 891, 901 (E.D. Ky. 2017) (denying as

premature defendant's motion in limine to exclude "hearsay statements" where defendant "failed to identify any particular statements he seeks to exclude").  If the Government offers evidence from Williams's phone at trial, Milligan will have the opportunity to object and identify the statements that he asserts are hearsay, and the Court will take up those objections then.[2]

### b. Relevance

Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without that evidence.

Milligan submits that, should Williams not testify at trial, evidence from her phone is irrelevant because, the "meaning of the text messages and contacts will be without a foundational basis and subject to the speculative interpretation of the agents."  Br. Supp. Mot. to Preclude Admission of Phone Evid. at PageID.836.  This argument provides the Court with no explanation as to why evidence from Williams's phone fails to make a fact of consequence in this action more or less probable.  Milligan's motion fails to establish that evidence from Williams's phone is inadmissible on relevance grounds.

### c. Authentication

Milligan argues that the Government cannot authenticate evidence from Williams's phone without the benefit of Williams's testimony.  Id. at PageID.837.  Milligan further submits that the Government must also satisfy Rule 902(14)'s self-authentication requirements, which provides that "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the

---

[2] As the Government points out, the contents of Williams's phone may contain non-hearsay evidence—i.e., statements not offered to prove the truth of the matter asserted—such as "locations, timestamps, [and] call logs."  Gov't Resp. at 8.  And some statements may be hearsay but nonetheless admissible under one of the many hearsay exceptions.  See Fed. R. Evid. 801; Fed. R. Evid. 803.

certification requirements of Rule 902(11) or (12) . . . ." is self-authenticating.  Id. (quoting Rule 902(14)).

To authenticate evidence under Rule 901(a), "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Contrary to Milligan's assertion, Rule 901 does not require that a proponent authenticate evidence in a particular manner.  Rather, "this task can be accomplished in a number of ways—with testimony from someone with knowledge of the evidence offered, for example, or by pointing to distinctive characteristics that establish authenticity."  United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (punctuation modified).

The Government submits that it may attempt to authenticate the evidence "through Williams, through the testimony of the forensic examiner under [Rule 901], or [through] self-authenticat[ion] as certified data copied from [Williams's phone] under [Rule 902(14)]."  Gov't Resp. at 7–8.  These efforts to authenticate the text messages may well prove to be sufficient to satisfy Rule 901.  However, without the benefit of a review of the testimony from the Government's proposed witnesses or the certification required under Rule 902(14), the Court cannot presently make a blanket determination of the admissibility of the evidence from Williams's phone.  The admissibility of this evidence will depend on whether the manner in which the Government attempts to authenticate it at trial meets the requirements under Rule 901 or 902.

Because each of Milligan's arguments fails to establish the inadmissibility of evidence from Williams's phone, the Court denies his motion to prevent admission of evidence gathered from the phone without prejudice.  Milligan may reassert his objections to such evidence at trial as set forth above.

### 4.  Location Tracking Data

Milligan moves to prevent the use of the Verizon Wireless subpoena results to generate location tracking of the device that accessed tracking information on the USPS website.  See Mot.

to Prevent Use of Location Data ¶¶ 4–9.  Milligan argues that Government's use of information gathered from the Verizon Wireless subpoena requires a warrant under <u>Carpenter v United States</u>, 138 S.Ct. 2206, 2213 (2018).  Br. Supp. Mot. to Prevent Use of Location Data at PageID.841.

Milligan's motion lacks merit.  In <u>Carpenter</u>, the United States Supreme Court held that the third-party doctrine did not apply as an exception to the Fourth Amendment where the Government had obtained defendant's cell tower location data from his wireless carrier during a four-month span.  138 S.Ct. at 2219–2221.  The court noted that its holding was "a narrow one" that did not "address other business records that might incidentally reveal location information." <u>Id.</u> at 2220.

This case is unlike <u>Carpenter</u>.  Here, the Government did not request from Verizon the sort of comprehensive location data at issue in that case.  Indeed, as the Government submits, the subpoena "did not request any location information, such as that obtained from cell sites."  Gov't Resp. at 9 (citing Exhibit A. to Mot. to Prevent Use of Location Data at PageID.845).  Nor does Milligan's motion specify as to which information obtained from the subpoena could possibly reveal such location data.  <u>See</u> Br. Supp. Mot to Prevent Use of Location Data.  And even if Verizon's response to the subpoena incidentally revealed data relevant to Milligan's location, <u>Carpenter</u> does not govern in such circumstances.  138 S.Ct. at 2220.  Put simply, Milligan has not established that the Government's subpoena to Verizon implicated Milligan's privacy interests under the Fourth Amendment.

Because Milligan fails to establish that the information obtained via the Government's subpoena to Verizon implicates his Fourth Amendment rights, the Court denies Milligan's motion.

### 5.  Government Proposed Exhibit 29A/4

Milligan moves to preclude the Government from admitting evidence of text messages on Facebook Messenger apparently between Milligan and an individual identified in the messages as Kelsey Marie.  <u>See</u> Milligan Mot. to Prohibit Admission of Ex. 29A/4 ¶¶ 5–8.  According to the

Government, the messages include references to drug trafficking and include discussions of "price, type, and avoiding detection from law enforcement."  Gov't Resp. to Mot to Prohibit Admission of Ex. 29A/4 at 2.

Milligan argues that the exhibit is inadmissible because it is (i) hearsay, (ii) irrelevant, and (iv) impermissible character evidence under Rule 404(b).  Br. Supp. Mot. to Prohibit Admission of Ex. 29A/4.  The Court addresses each argument in turn.

### a.  Hearsay

Milligan argues that the statements made by Kelsey Marie are hearsay.  Br. Supp. Mot to Prohibit Admission of Ex. 29A/4 at 4.[3]  He submits that the messages do not fall within the scope of Rule 801(d)(2)(E), which provides that statements made by an opposing party's coconspirator in during and furtherance of the conspiracy are not hearsay.  Id.

The Court need not reach the issue of whether Kelsey Marie's messages are coconspirator statements because it finds that the statements are not hearsay as defined under Rule 801.  As the Government points out, the statements are not offered to prove the truth of the matters asserted in those statements, rather, the Government is offering the messages to provide context for Milligan's statements.  Gov't Resp. to Mot to Prohibit Admission of Ex. 29A/4 at 5; see Dunnican, 961 F.3d at 873 (affirming district court's admission of portions of text messages from unidentified parties who conversed with defendant "to provide context to that party's own statements") (punctuation modified); see United States v. Beckman, 624 F. App'x 909, 913 (6th Cir. 2015) (explaining that portions of chat messages made by someone other than defendant were admissible to provide "context to [defendant's] own statements").  Milligan's hearsay argument fails.

---

[3] Milligan does not appear to argue that Milligan's statements contained in Ex. 29A/4 are hearsay. To the extent Milligan's motion challenges the admission of Milligan's statements, the Court agrees with the Government that the statements are opposing party statements, and therefore, are not hearsay under Rule 801(d)(2).

**b.  Relevance**

Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.  Importantly, "Rule 403 is not concerned with the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." Roche Diagnostics Corp. v. Shaya, No. 19-10264, 2023 WL 4198866, at *6 (E.D. Mich. June 27, 2023) (punctuation modified).

Milligan contends that the Facebook messages' probative value is outweighed by risk of unfair prejudice because they are (i) "speculative" and "serve[] no relevant purpose to the issues at hand" and (ii) are "extremely prejudicial" because they amount to "agents' interpretive spin on an uninvestigated and speculative chat."   Br. Supp. Mot to Prohibit Admission of Ex. 29A/4 at PageID.1017.

The Facebook messages are relevant and probative to the charged conspiracy offense. These messages are highly probative of the Milligan's alleged plan to recruit another drug distributor in furtherance of the drug conspiracy.  See Exhibit 29A/4 at PageID.1021.  In one exchange, for example, Kelsey Marie asks Milligan to "[c]onsider bringing a little rock of that. I want to know what it is I'm working with. I can spread the word." Id.  Milligan replies in part that Kelsey Marie should "jus[t] drive down here, and get it . . . [and Milligan] will give [her] some to take back." Id.

Although Milligan vaguely objects that the messages are speculative and subject to "agents' interpretive spin" he provides no explanation for this assertion, and at any rate, such arguments go to the "weight of the evidence, not its admissibility."  Avery v. Neverson, No. 18-cv-11752, 2022 WL 3585717, at *5 (E.D. Mich. Aug. 22, 2022).

Milligan fails to establish that the probative value of the Facebook messages is outweighed by risk of unfair prejudice.  The Court will not exclude the messages on this ground.

### c. 404(b)

Milligan also argues that the Facebook messages are inadmissible propensity evidence under Rule 404(b). Under that Rule, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, Rule 404(b) further provides that such evidence is admissible if offered "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Facebook messages show Milligan's plan and intent for carrying out the alleged conspiracy. As the Government notes, see Gov't Resp. to Mot. to Prohibit Admission of Ex. 29A/4at 8–9, the messages serve as evidence showing how Milligan engaged other potential drug distributors to advance the overarching drug conspiracy. In addition, because the messages contain Milligan's phone number, they are probative of his identity. The messages are not offered for the impermissible purpose of showing Milligan's criminal propensity, but rather they are offered for the permissible purposes of proving Milligan's intent, plan, and identity. See Fed. R. Evid. 404(b)(2). The Facebook messages are admissible under Rule 404(b).

Because the Facebook messages contained in proposed Government exhibit 29A/4 are relevant, non-hearsay evidence offered for a permissible purpose under Rule 404(b), the Court denies Milligan's motion to exclude the exhibit.

### B. The Government's Consolidated Motion in Limine

The Government has moved to preclude four categories of evidence or argument: (i) encouraging jury nullification, (ii) regarding Government charging decisions, (iii) concerning collateral consequences associated with a conviction, and (iv) improperly characterizing the Government's burden of proof by utilizing a burden of proof chart. See Gov't Consolidated Mot. in Limine at 1. Milligan does not contest the Government's requests regarding jury nullification,

charging decisions, and collateral consequences.  Milligan Resp. at 1.  The Court will therefore grant the Government's motion with respect to these three requests.

Milligan does contest, however, the Government's request to preclude Milligan from utilizing a burden of proof chart during his closing argument.  Id. at 1.  Milligan has indicated that he intends to show the jury during his closing argument a PowerPoint slide containing the below chart regarding the Government's burden of proof:



Milligan Resp. at 2.  The Government objects to Milligan's proposed use of this chart, arguing that it misstates the law and will mislead the jury.  See Br. Supp. Gov't Consolidated Mot. in Limine at 10.

The Court agrees with the Government.  The chart Milligan wishes to show the jury does not accurately communicate the Government's burden of proof.  And while Milligan argues that the chart is aimed at helping the jury understand the "proof beyond a reasonable doubt" concept, see Milligan Resp. at 2, it is ultimately unnecessary given that the Court will be providing the jury with instructions designed to help the jury understand the Government's burden.  See Sixth Circuit

Pattern Jury Instruction ¶ 1.03.  Further, by using language that varies from what the jury instruction uses, the chart may well confuse or mislead the jury.

Milligan's argument fares no better in his cursory appeal to a defendant's right to be heard through counsel under Sixth Amendment.  See Milligan Resp. at 2 (citing Herring v. New York, 422 U.S. 853, 856 (1975)).  As several courts have explained, a defendant's Sixth Amendment rights are not invaded by a court's ruling restricting counsel from showing the jury demonstrative aids that risk misleading or confusing the jury.  See e.g., United States v. Millegan, No. 3:19-cr-00528, 2022 WL 1913289, at *2–*3 (D. Or. June 2, 2022) (granting Government's motion to exclude defendant's burden of proof chart and explaining that "[d]efendant's Sixth Amendment rights [were] not impinged" by the court's ruling); Palomar v. Madden, No. 115-cv-01279, 2016 WL 4095965, at *20 (E.D. Cal. Aug. 2, 2016) (affirming trial court's ruling preventing defense counsel from presenting burden of proof chart and rejecting defendant's argument based on Herring).

Because Milligan's proposed burden of proof chart will likely confuse or mislead the jury regarding the Government's burden of proof, the Court grant's the Government's request to preclude Milligan from displaying the chart or discussing the Government's burden of proof in similar terms at trial.

### III. CONCLUSION

For the reasons stated above, the Court denies Milligan's motions in limine (Dkts. 123, 125, 126, 127, 149) and grants the Government's consolidated motion in limine (Dkt. 129).

SO ORDERED.

Dated: October 27, 2023                          s/Mark A. Goldsmith
      Detroit, Michigan                          MARK A. GOLDSMITH
                                  United States District Judge