UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case No. 20-cr-20134

v.                                      HON. MARK A. GOLDSMITH

ANTHONY ROY MILLIGAN JR.,

        Defendant.

_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT ANTHONY**
**MILLIGAN'S MOTION TO PROHIBIT GOVERNMENT'S PROPOSED 404(b)**
**EVIDENCE (Dkt. 131)**

Defendant Anthony Milligan is charged with one count of conspiracy to possess with intent to distribute heroin and methamphetamine under 21 U.S.C §§ 841, 846, and a second count of possession with intent to distribute heroin under § 841(a)(1).  Superseding Indictment (Dkt. 16). Before the Court is Milligan's motion to prohibit evidence of the Government's proposed Rule 404(b) evidence (Dkt. 131).[1]  For the reasons that follow, the Court grants the motion in part and denies the motion in part.

**I. BACKGROUND**

The Government has charged Milligan with participating in a conspiracy from March 1, 2018 to August 29, 2018 to possess with intent to distribute heroin and methamphetamine.  Resp.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2).  In addition to the motion, the briefing includes the Government's response (Dkt. 133).  The Court previously issued an order stating its decision to grant in part and deny in part this motion with a full opinion addressing the motion at a later date.  See 10/16/2023 Order (Dkt. 145).

at 2; Superseding Indictment.   According to the Government, its investigation of Milligan continued after the end-date of the charged conspiracy and through 2019, during which time the Government continued to gather evidence of suspected drug trafficking by Milligan.  See Resp. at 2–3.

 As part of its investigation, the Government obtained three sources of evidence relevant to this motion: (i) text messages from August 2019 between Milligan and an individual named Terrence Hannah in which Milligan and Hannah allegedly discuss receipt of a package, (ii) recorded phone calls from August 17 and 21 of 2019 between Milligan and an individual whom the Government identifies as "KF" and characterizes as an "unindicted co-conspirator," during which Milligan and KF make several apparent references to drug trafficking; and (iii) evidence of a parcel intercepted by the United States Postal Service (USPS), destined to Cary, North Carolina, which allegedly contained methamphetamine inside the empty shell of a composition notebook (Cary Package).  Id. at 2–5.

 The Government notified Milligan's counsel of its intent to admit these items as evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b).  See Mot. ¶¶ 1–2; Resp. at 1.  In response to the Government's notice, Milligan brought this motion, objecting that the proposed evidence is inadmissible character evidence under Rule 404(b).  See Mot. ¶ 5.

## II. ANALYSIS

 Federal Rule of Evidence 404(b) prohibits the admission of evidence of "other crime[s], wrong[s], or act[s] . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, the Rule also provides that such evidence may be admissible for purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R.

Evid. 404(b)(2).  In deciding the admissibility of Rule 404(b) evidence, a "district court employs a three-step process in which it must determine whether: (1) the 'other act' actually occurred, (2) the evidence is offered for a permissible purpose, and (3) its probative value is not substantially outweighed by unfair prejudice."  United States v. Carter, 779 F.3d 623, 625 (6th Cir. 2015).  As to the first step of the Court's analysis—whether the act actually occurred—the Rule "requires that the jury can reasonably conclude that the act occurred and that the defendant was the actor." United States v. Thompson, 690 F. App'x 302, 307 (6th Cir. 2017) (punctuation modified).

The Court begins by addressing the evidence of Milligan's text messages and recorded phone calls and then addresses the evidence of the Cary Package.

### A.  Text Messages and Phone Calls

Milligan's motion does not address whether there is sufficient evidence for a jury to reasonably conclude that Milligan engaged in the "other acts" of discussing drug trafficking through phone calls with KF or discussing the delivery and receipt of packages with Hannah through text messages.  See Br. Supp. Mot. at 6–10.  Given the lack of a dispute regarding the first step, the Court proceeds to address the second and third steps: (i) whether the text messages and phone calls are offered for a permissible purpose and (ii) whether the probative value of such evidence is substantially outweighed by the risk of unfair prejudice.

### 1.  Milligan's Text Messages with Hannah

The Government submits that, as part of the charged conspiracy, Milligan attempted to receive a package of heroin through the mail in July 2018 (Wenonah Package).  Resp. at 11.  It further submits that Hannah's fingerprints were found on the Wenonah Package.  Id.  On this basis, the Government argues that because Milligan "remained in communication with Hannah" in 2019,

3

the text messages are "evidence that Milligan planned and intended to receive the [Wenonah Package]." Resp. at 11. The Court disagrees.

"Evidence of prior [or subsequent] crimes[2] is admissible when specific intent is an element of the crime charged even though lack of criminal intent was not raised as a defense." Thompson, 690 F. App'x at 308 (punctuation modified). "In drug-distribution cases, [the United States Court of Appeals for the Sixth Circuit] has only found past distribution evidence probative of present intent when the [other acts] were part of the same scheme or involved a similar modus operandi as the present offense." Id. (punctuation modified). The Sixth Circuit has further "clarified that when using 404(b) evidence to show specific intent it is not necessary that the crimes be identical in every detail, but the [other] acts should be part of the same scheme or involve a similar modus operandi as the present offense." United States v. Emmons, 8 F.4th 454, 475 (6th Cir. 2021) (punctuation modified, citations omitted).

The August 2019 text messages between Milligan and Hannah provide little probative value as to whether Milligan planned or intended to receive the heroin contained in the Wenonah Package in July 2018. Rather, the exchange consists of vague messages—which occur nearly one year after the end of the charged conspiracy—in which Milligan and Hannah appear to be discussing the receipt of a package.[3] While the Government speculates that the texts show that Milligan remained in communication with Hannah, and that he intended to receive heroin from him in July 2018, see Resp. at 11, it is not clear that the messages reflect discussions about

---

[2] See United States v. Barnes, No. 3:13-cr-117, 2014 WL 5461843, at *4 (E.D. Tenn. Oct. 27, 2014), aff'd, 822 F.3d 914 (6th Cir. 2016) (explaining that "Rule 404(b) is not limited to prior acts").

[3] The transcripts of the text messages and phone calls have not been made publicly available. However, the Government has made the transcripts available to the Court and the Court has reviewed them.

distributing drug-packages through the mail.  Indeed, due to the ambiguous nature of the messages, it is not entirely clear to the Court that the messages even discuss the sending or receipt of packages.  Given the speculative nature of the connection between the text messages and the delivery of the Wenonah package that occurred more than a year prior, the Court finds that the evidence is not indicative of Milligan's intent or plan, as the Government contends.[4]

Relatedly, the Court finds that the probative value of the text messages is far outweighed by the risk of unfair prejudice.  The evidence invites the jury to speculate that Milligan arranged for the delivery of drug packages with Hannah in 2019, and "further invit[es] the jury to conclude that . . . if [Milligan] did it once [he] probably did it" in this instance.  United States v. Jenkins, 345 F.3d 928, 939 (6th Cir. 2003) (quoting United States v. Haywood, 280 F.3d 715, 723 (6th Cir. 2002)).  This is precisely the sort of inference that Rule 404(b) is designed to prevent.  See United States v. Merriweather, 78 F.3d 1070, 1079 (6th Cir. 1996) (explaining that evidence of taped conversations relating to an uncharged drug conspiracy raised a "very great" danger that the jurors would infer that "just as [the defendant] conspired with [one alleged coconspirator], so he conspired with [another]—the very inference that Rule 404(b) forbids").

Because the Court finds that the text messages cannot be offered for a proper purpose and carry a substantial risk of prejudice that outweighs their probative value, the Court grants Milligan's motion with respect to the text messages.

---

[4] In a conclusory fashion, the Government also argues that the texts show Hannah's identity as the sender and unindicted co-conspirator and a lack of mistake that the Wenonah Package was sent to the Wenonah address.  Resp. at 11.  But the text messages, which contain only vague references to the receipt of an unidentified item in 2019, provide little probative value as to whether Hannah sent the Wenonah Package in 2018, or that Milligan knew that the package contained heroin.

## 2.  Milligan's Phone Calls with KF

Milligan also challenges the admissibility of the evidence of phone calls between Milligan and KF in 2019.  Br. Supp. Mot. at 13.  According to the transcript of the phone calls, Milligan and KF make several apparent references to types of drugs, such as "black," "brown," and "white" for heroin, and discuss methods of mixing or cutting drugs.  Resp. at 12.  In addition, Milligan references an individual he calls "T" and "my guy in Cali," which the Government submits refers to Hannah.  Id.

The Government argues that the phone calls between Milligan and KF are admissible to prove three purposes: (i) Milligan's plan and knowledge of "how to traffic heroin," (ii) a lack of mistake that Hannah would have sent Milligan the heroin contained in the Wenonah Package, and (iii) Milligan's plan, knowledge, identity, lack of accident, or absence of mistake regarding "his role in the charged conspiracy."  Id. at 12.

Again, the Court disagrees with the Government.  As to the first argument, general references to drug terminology contained in the phone calls have no bearing on Milligan's alleged plan to traffic heroin in furtherance of the charged conspiracy.  And while the Government asserts that Milligan refers to Hannah during the calls, this assertion is entirely speculative, and such speculation provides little probative value in determining whether Milligan mistakenly received heroin from Hannah via the Wenonah Package in July 2018.  Likewise, the phone calls, which occurred in August 2019—one year after the end of the charged conspiracy—have little bearing on Milligan's "plan, knowledge, identity, lack of accident, or absence of mistake" with respect to the charged conspiracy.

The Court also finds that the risk of prejudice posed by the phone calls substantially outweighs their probative value.  Because the discussions captured in the recorded phone calls

offer little connection to the charged conspiracy, admission of the phone calls creates a risk that the jury relying on such evidence would make an improper inference, namely, that because Milligan discussed drugs in 2019, he is more likely to have participated in the charged conspiracy to distribute or possess drugs, which the Government alleges ended in August 2018.   See, e.g., United States v. Sain, No. 07-20309, 2009 WL 136910, at *11–12 (E.D. Mich. Jan. 16, 2009) (excluding evidence of defendant's subsequent conviction for conspiracy to possess with intent to distribute marijuana where the "only apparent connection" between the subsequent and charged offense was "the distribution of marijuana," and explaining that the lack of a "substantial temporal or factual similarity between the charged conspiracy [and subsequent offense]" meant that it was "not probative of a material issue other than character") (punctuation modified); United States v. Joseph, 270 F. App'x 399, 404–405 (6th Cir. 2008) (concluding that trial court's admission of evidence of defendant's prior bank frauds as a common scheme or plan in case where defendant was charged with embezzling money from his former bank-employer where a lack of evidence of similarity between the prior and charged crimes left one to "resort to speculation rather than legitimate inference to arrive at the conclusion that [defendant] followed a pre-conceived plan to steal from several employers").

Because the Court finds that the phone calls are not offered for a proper purpose and that the risk of unfair prejudice outweighs their probative value, the Court will grant Milligan's motion as to the phone calls.

### B.  The Cary Package

Milligan also seeks to prohibit evidence of the Cary Package.  He argues (i) that there is insufficient evidence that Milligan "had anything to do with the package," (ii) that the package is

not offered for a proper purpose, and (iii) that the package's prejudicial impact outweighs its probative value.  Br. Supp. Mot. at 10, 14, 16–17.  The Court addresses each argument in turn.

### 1.  Sufficiency of the Evidence

The Court finds that the Government has cleared the hurdle of supplying evidence sufficient to show that a "jury can reasonably conclude that the act occurred and that [Milligan] was the actor" involved with the packages for purposes of Rule 404(b).  Thompson, 690 F. App'x at 307 (punctuation modified).  According to the Government, law enforcement observed that the package was sent from Lima, Ohio, which was the location of Milligan's last registered address.  Resp. at 8.  Law enforcement also observed Milligan leave the apartment to which the package was addressed just two days before its scheduled arrival.  Id.  In addition, the Government submits that it will offer testimony from law enforcement agents who will testify that they can recognize Milligan's voice from a recorded phone call in which Milligan allegedly uses the name "Dwayne Thomas" and inquires about the status of the Cary Package.  Id. at 10.

The Court finds this evidence sufficient for a reasonable jury to find that Milligan was the actor involved with respect to the Cary Package.

### 2.  Permissible Purpose

Under Rule 404(b), "other acts evidence is probative of modus operandi when all of the similarities between the other acts and the current crime 'in combination, present an unusual and distinctive pattern constituting a signature.'"  United States v. Bell, No. 17-20183, 2022 WL 1060737, at *4 (E.D. Mich. Apr. 8, 2022) (quoting United States v. Mack, 258 F.3d 548, 554 (6th Cir. 2001)).  In addition, "commission of similar crimes in the past can be used to show identity, i.e., that the defendant is the culprit rather than someone else, if the earlier crimes have particularly

identifying characteristics also observed in the later crime." United States v. Whitt, 752 F. App'x 300, 305 (6th Cir. 2018)

The Government submits that evidence of the Cary Package is offered to show Milligan's "identity, plan, and modus operandi for the sending of two parcels to [alleged co-conspirator Brian] Carr in August 2018" in furtherance of the charged conspiracy.  Resp. at 13.  The Court agrees.

The Court finds that evidence of the Cary Package is offered for the permissible purpose of proving Milligan's modus operandi and identity.  As the Government points out, the Cary Package matches a pattern of three other instances in which Milligan's associates allegedly sent drugs through the mail by packaging the drugs inside of a hollowed-out composition notebook. See Resp. at 9, 13.  The Court finds that such evidence is sufficiently distinctive to constitute a signature for purposes of showing modus operandi.  Similarly, the Court finds that such evidence is probative of Milligan's identity because the uniqueness of sending drugs through the mail in a composition notebook is a "particularly identifying characteristic[]." Whitt, 752 F. App'x at 305.

### 3.  Balancing Unfair Prejudice and Probative Value

As explained above, the evidence of the Cary Package is highly probative of Milligan's alleged modus operandi and identity in the alleged conspiracy and that probative value outweighs the risk of unfair prejudice to Milligan.  However, the Court recognizes the potential for jurors to rely on such evidence to make an improper inference that Milligan was more likely to have conspired to distribute and possess drugs merely because he allegedly conspired with another person. See Merriweather, 78 F.3d at 1079.  To guard against the risk of the jury making such an improper inference, the Court will provide the jury with a limiting instruction that it may consider evidence of the Cary Package only as it relates to the Government's claims regarding Milligan's modus operandi and identity.

9

Accordingly, the Court denies Milligan's motion with respect to his request to prohibit admission of evidence of the Cary Package.

### III. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Milligan's motion to prohibit admission of Government's proposed Rule 404(b) evidence (Dkt. 131).

SO ORDERED.

Dated:  November 2, 2023                              s/Mark A. Goldsmith
       Detroit, Michigan                              MARK A. GOLDSMITH
                                                      United States District Judge